IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANICE RENA SATTERFIELD | ) | |
| | ) | |
| v. | ) | No. 3:11-1225 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

To: The Honorable John T. Nixon, Senior District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which Defendant has filed a response (Docket Entry No. 15). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 16).

Upon review of the administrative record as a whole and consideration of the parties' filings, the Court recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) be GRANTED, the decision of the Social Security Administration be reversed, and this matter be remanded for further administrative proceedings consistent with this Report.

## I. INTRODUCTION

Plaintiff protectively filed for a period of disability, DIB, and SSI in October of 2007. *See* Transcript of the Administrative Record (Docket Entry No. 8),[1] at 26, 67, 69-70, 72. She alleged a disability onset date of July 9, 2004. AR 67, 69-70, 72. Plaintiff asserted that she was unable to work because of swelling of the brain, manic depression, bipolar disorder, right knee pain, and lower back pain. AR 51, 68, 71, 73.

Plaintiff's applications were denied initially and upon reconsideration. AR 67-82. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Linda Gail Roberts on May 19, 2010. AR 41. On June 30, 2010, the ALJ issued a decision unfavorable to Plaintiff. AR 23-25. On November 8, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR 1-6, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on June 30, 2010. AR 23-25. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s). All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s), where appropriate.

2. The claimant has not engaged in substantial gainful activity since July 9, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post injury to right knee; status post chemical exposure; degenerative disc disease of the lumbar spine; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

***

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequent climbing, balancing, stooping, kneeling, crouching, or crawling; can understand and remember for simple and detailed tasks; can concentrate on and persist for simple and detailed tasks, despite some difficulty.

***

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

***

7. The claimant was born on December 21, 1975 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

***

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 9, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 28-34.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938));

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a),

5

(c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under

7

appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

## C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, AR 28, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 28-29. At step four, the ALJ found that Plaintiff's impairments rendered her unable to perform any past relevant work, AR 33, thus triggering the fifth step of the inquiry. At step five, the ALJ found that Plaintiff's RFC allowed her to perform light work with certain limitations as set out in the ALJ's findings, AR 30-33, and that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 33-34.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by (1) improperly rejecting the restrictions recommended by her treating physician, and by (2) failing to provide good reasons for rejecting such restrictions. DE 12-1 at 5. Plaintiff therefore requests that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for an award of benefits, or in the alternative, remanded for a new hearing. *Id*. at 13.

Sentence four of 42 U.S.C. § 405(g) states the following:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Because Plaintiff's assertions of error both relate to the ALJ's assessment of the treating physician's opinion, the Court will address them jointly as follows:

**1. Whether the ALJ improperly rejected the opinion of Plaintiff's treating physician, and whether the ALJ provided good reasons for doing so.**

Plaintiff argues that the medical source statement provided by Plaintiff's treating physician, Dr. Bien Samson,[2] AR 482-84, which contains numerous functional limitations and restrictions, is entitled to controlling weight. DE 12-1 at 7. Plaintiff states that Dr. Samson has been her primary care physician "for years," and that the record contains multiple notes documenting his treatment of Plaintiff during the year preceding the medical source statement he completed on April 12, 2010. *Id*. at 6; AR 484. Plaintiff also claims that Dr. Samson based his opinion on medical records documenting her treatment with Joye Oldham, a nurse practitioner,[3] and Dr. John Bacon. DE 12-1 at 6-7. Plaintiff argues that these records were not available to the agency physicians who provided opinions regarding her limitations, including Dr. Roy Johnson, who examined Plaintiff on February 17, 2008, and Dr. James Millis, who reviewed her medical records and essentially affirmed the report prepared by Dr. Johnson. *Id*. at 2-3, 7; AR 389-90, 411-18. Plaintiff contends that Dr. Samson was therefore in the best position to provide an "informed medical opinion" with respect to her condition. DE 12-1 at 7.

Plaintiff additionally argues that the ALJ failed to provide good reasons for her decision to reject the opinion of Dr. Samson in violation of 20 C.F.R. § 404.1527.[4] *Id*. at 8-9. The relevant language in 20 C.F.R. § 404.1527(c)(2) states the following:

---

[2] The ALJ incorrectly refers to the treating physician as "Dr. Samon" in her opinion. AR 31.

[3] Plaintiff inaccurately identifies Ms. Oldham as "Dr. Oldham." DE 12-1 at 3, 7.

[4] Plaintiff cites 20 C.F.R. § 404.1527(d) in her memorandum, but appears to refer to 20 C.F.R. § 404.1527(c)(2).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

Plaintiff cites the Sixth Circuit's explanation that the ALJ provide "good reasons" for the weight given to the treating source's opinion in order to "let claimants understand the disposition of their cases." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). The Sixth Circuit emphasized that this requirement is of particular importance,

> [i]n situations where a claimant knows that [her] physician has deemed [her] disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Id*. Plaintiff argues that the ALJ's statement that Dr. Samson's opinion is not consistent with the medical evidence of record does not satisfy the specificity requirement discussed in *Wilson*. DE 12-1 at 10; AR 31.

The Court notes that the ALJ's entire discussion of Dr. Samson's opinion consisted of the following:

11

> As for opinion evidence, Dr. Bien T. Samon [sic] completed a medical source statement in May 2010. Ex. 17F. Dr. Samon [sic] opined that the [Plaintiff] could stand for no more than 60 minutes in an 8-hour workday and could sit for no more than 2 hours in an 8-hour workday. He also opined that the [Plaintiff] could never bend, stoop, balance, engage in fine manipulation, work around dangerous equipment, tolerate heat, tolerate dust or pulmonary irritants, or tolerate noise. Ex. 17F. *The medical evidence of record contains no treatment notes indicating any actual treatment from Dr. Samon* [sic]. His opinion is inconsistent with the medical evidence of record and other substantial evidence of record in this case and is therefore given little weight.

AR 31 (emphasis added). The italicized portion of this text suggests that the ALJ discounted Dr. Samson's opinion at least partially based on the perceived lack of treatment notes in the record. However, there are several notes documenting Plaintiff's treatment with Dr. Samson in the record, including visits on April 7, 2009, April 21, 2009, September 2, 2009, January 6, 2010, January 12, 2010, March 22, 2010, and March 24, 2010. AR 457-60. The ALJ's statement that there is no evidence of actual treatment with Dr. Samson in the record is therefore inaccurate.

A representative for Plaintiff appears to have submitted a letter to the ALJ via facsimile on July 15, 2010 to inform her of this error and to advise her that treatment notes from Dr. Samson were present in the record. AR 11.[5] The ALJ responded to this correspondence by stating that "[m]istakes do happen," and that "the typographical errors in [her] decision were inconsequential." Notably, the ALJ also stated that she "was well aware Dr. Samson was a treating physician of the [Plaintiff]." AR 11. Kevin Thomas, former counsel for Plaintiff, then submitted a letter to the ALJ on July 19, 2010 regarding the error, and advised the ALJ that the office notes documenting Plaintiff's treatment with Dr. Samson were in fact in the record. AR 137. Mr. Thomas also suggested that the ALJ may have failed to notice these records due to the clerical error in her opinion that incorrectly listed the

---

[5] The Court sees no evidence of the July 15, 2010 letter in the record. The only reference to this letter is found in the ALJ's responsive letter. AR 11.

treating physician's name as "Dr. Samon." AR 137. Mr. Thomas requested that the ALJ reconsider her decision in light of this error. AR 137. There is no indication, however, that the ALJ responded to this request.

Although the ALJ failed to acknowledge Dr. Samson as Plaintiff's treating physician in the opinion, the letter from July 16, 2010 indicates that she was aware of his status as treating physician. AR 11. Regardless, the ALJ clearly failed to provide good reasons for rejecting Dr. Samson's recommended restrictions, and notwithstanding the July 16, 2010 letter, her statement regarding the lack of treatment notes in the record suggests that she doubted Dr. Samson's status as Plaintiff's treating physician at the time of her decision. AR 31. The ALJ's brief discussion of Dr. Samson's opinion states only that "[h]is opinion is inconsistent with the medical evidence of record and other substantial evidence of record in this case . . . ." AR 31. The Court finds that this single statement falls woefully short of the procedural requirement contained in 20 C.F.R. § 404.1527 that the ALJ provide good reasons for rejecting a treating physician's opinion. If the ALJ's opinion "fails to follow procedural rules, the decision should not be affirmed unless it can be shown that any error was harmless." *Sharp v. Barnhart*, 152 F. App'x 503, 507 (6th Cir. 2005). The issue for the Court is thus whether the ALJ's failure to explain her reasons for rejecting Dr. Samson's opinion constitutes harmless error.

The Sixth Circuit has identified three instances in which an ALJ's failure to provide good reasons for rejecting a treating source's opinion represents harmless error: (1) if a treating physician's opinion is "so patently deficient" that the ALJ could not possible credit it; (2) if the ALJ adopts the opinion of the treating source or makes findings consistent with the treating source's opinion; or (3) if the Commissioner has "met the goal of [20 C.F.R. § 404.1527(c)(2)]," even though

she has not complied with the terms of the regulation. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (citing *Wilson*, 378 F.3d at 547). The ALJ clearly did not adopt Dr. Samson's opinion, nor did she meet the goal of 20 C.F.R. § 404.1527(c)(2), which aims to "let claimants understand the disposition of their cases" and ensure that the ALJ applies the treating physician rule in her assessment. *Wilson*, 378 F.3d at 544 (citing *Snell*, 177 F.3d at 134). In fact, it is unclear from the opinion whether the ALJ even acknowledged that Dr. Samson was the treating physician. As such, the question is whether Dr. Samson's opinion was "so patently deficient" that the ALJ could not reasonably credit it.

Despite Defendant's argument that Dr. Samson's opinion is not well supported by medically acceptable evidence, DE 15 at 13, the Court cannot agree that Dr. Samson's opinion was sufficiently deficient to warrant summary dismissal by the ALJ. In the medical source statement completed on April 12, 2010, Dr. Samson diagnosed Plaintiff with degenerative disc disease with foraminal narrowing at the L5-S1 level, as well as spondylosis at the L5-S1 level. AR 483. He also described Plaintiff's lower back as "unstable" and noted narrowing of the nerve root canal. AR 484. This opinion is consistent with objective findings contained in the record, including an MRI of Plaintiff's lumbar spine performed in May of 2010 that corroborates Dr. Samson's diagnosis. AR 485-86.

Nevertheless, Defendant appears to argue that because the MRI was performed in May of 2010, approximately one month after the medical source statement was completed, Dr. Samson's opinion is invalid:

> The only evidence in the record that arguably supports Dr. Samson's opinion is the May 7, 2010 MRI of [Plaintiff's] lumbar spine. Dr. Samson did not have these MRI results when he wrote his opinion, and although they show problems in [Plaintiff's] lower spine that did not exist earlier in her alleged period of disability, the doctor

14

> who interpreted the MRI recommended further testing to correlate his findings, specifically suggesting a radiculopathy test.

DE 15 at 13. The Court finds this argument to be facile and without merit. Defendant incorrectly suggests that the objective findings from the MRI should be disregarded because the interpreting physician requested that the findings be "correlate[d] clinically for bilateral L5 radiculopathy." *Id.*; AR 486. The fact that the interpreting physician recommended that the treating physician follow up with Plaintiff to clinically test for radiculopathy does not negate the objective findings of the MRI. Defendant's suggestion otherwise is specious.

Additionally, Dr. Samson, the treating physician, diagnosed Plaintiff with degenerative disc disease with narrowing of the nerve root canal. AR 484. The MRI similarly demonstrated degenerative disc changes with narrowing and compression of the nerve root at the L5 level. AR 485-86. It is irrelevant that the MRI took place after Dr. Samson's medical source statement was completed, as the MRI findings provide support for Dr. Samson's opinion. The ALJ attempted to discount this evidence solely based on Plaintiff's description of her daily activities during a mental status examination in March of 2008, which included cooking, making the bed, cleaning, and "rarely" driving. AR 31, 391-96. However, a claimant is not required to prove total incapacitation in order to be found disabled. *Knox v. Colvin*, No. 12-2028-JDT, 2015 WL 1294174, at *3 (W.D. Tenn. March 23, 2015). Additionally, activities such as cleaning and driving represent "minimal daily functions" and are not comparable to typical work activities. *Rogers*, 486 F.3d at 248. Moreover, Plaintiff stated during her hearing before the ALJ in May of 2010, more than two years after the mental status examination, that she only cooks with help from her father, never drives, and spends most of her time in a recliner. AR 57-58. There is no discussion of this testimony in the

15

ALJ's opinion. The ALJ is not permitted to cherry-pick the record to support her conclusions, but must instead consider the evidence taken as a whole. *Davis v. Colvin*, No. 2:10-CV-00088, 2015 WL 3504984, at *6 (M.D. Tenn. May 28, 2015) (citing *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984)). Incomplete analysis can serve as a basis for remand. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011). The Court finds that the ALJ in this case failed to provide a complete analysis of Plaintiff's condition, thus warranting remand of this case.

Although an ALJ is not required to discuss every piece of evidence in the record, she may not ignore evidence that is contrary to her ruling. *Craig v. Colvin*, No. 3:12-CV-00333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (citation omitted). Additionally, the ALJ is required to provide "good reasons" for discounting the opinion of a treating physician, including reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). Despite acknowledging that Dr. Samson was Plaintiff's treating physician in a correspondence drafted *after* issuance of the opinion, AR 11, the ALJ failed to fulfill her duty to provide specific reasons for her rejection of Dr. Samson's opinion. The Sixth Circuit has stated the following with regard to such failure:

> [W]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.

*Henley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted). Accordingly, it is recommended that this case be remanded for rehearing to include further consideration and discussion of the opinion of Dr. Bien Samson.

## V. RECOMMENDATION

For the above stated reasons it is recommended that Plaintiff's motion for judgment on the administrative record (DE 12) be GRANTED and that this case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration of Plaintiff's claims.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge